# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IN RE:

W.R. Grace & Co., *et al.*,

Debtors.

Libby Claimants, *et al.*,

Appellants,

v.

W.R. Grace & Co., *et al.*,

Appellees.

1:07-cv-00609
Hon. Ronald L. Buckwalter
United States District Judge

Appeal from United States
Bankruptcy Court for the
District of Delaware

Chapter 11

Case No. 01-01139
Adv. Proc. No. 01-771
Hon. Judith K. Fitzgerald

## APPELLANTS' BRIEF

Adam G. Landis (No. 3407)
Kerri K. Mumford (No. 4186)
Landis Rath & Cobb LLP
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE 19801
Telephone: (302) 467-4400

Daniel C. Cohn
Christopher M. Candon
Cohn Whitesell & Goldberg LLP
101 Arch Street
Boston, MA 02110
Telephone: (617) 951-2505

October 25, 2007

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

BASIS OF APPELLATE JURISDICTION ........................................................................... 1

ISSUES PRESENTED ON APPEAL.................................................................................... 2

STANDARD OF REVIEW .................................................................................................. 2

STATEMENT OF THE CASE.............................................................................................. 3

    Introduction........................................................................................................................ 3

    Procedural Background...................................................................................................... 6

        The State Litigation .................................................................................................... 7

        The BNSF Litigation ............................................................................................... 10

        The Bankruptcy Court Stay Order ........................................................................... 10

SUMMARY OF ARGUMENT .......................................................................................... 12

ARGUMENT...................................................................................................................... 12

    I.      The Stay Order Constitutes an Improperly Entered Preliminary
             Injunction and Should be Overturned by this Court ............................................... 12

    II.     The Bankruptcy Court Lacked Subject Matter Jurisdiction
             to Enjoin the State Litigation or the BNSF Litigation ........................................... 16

        A.  Subject Matter Jurisdiction is a Threshold Requirement................................. 16

        B.  The Bankruptcy Court Lacked Subject Matter Jurisdiction
             to Enter the Stay Order Enjoining the State Litigation ..................................... 18

        C.  For the Same Reasons, the Bankruptcy Court Lacked Jurisdiction
             to Enjoin the BNSF Litigation Pursuant to the Stay Order.............................. 28

    III.    Even if the Bankruptcy Court Concluded Jurisdiction Existed to Enjoin
             the State Litigation or BNSF Litigation, a Section 105 Injunction was Not
             Warranted............................................................................................................. 29

CONCLUSION................................................................................................................... 30

## **TABLE OF AUTHORITIES**

### <u>Cases</u>

<u>A.H. Robins, Inc. v. Piccinin (In re A.H. Robins Co.)</u>, 788 F.2d 994 (4th Cir.),
<u>cert. denied</u>, 479 U.S. 876 (1986) ..................................................................................24

<u>Am. Imaging Servs. v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.)</u>,
963 F.2d 855 (6th Cir. 1992) ........................................................................................30

<u>American Hardwoods, Inc. v. Deutsche Credit Corp.,</u>
<u>(In re American Hardwoods, Inc.)</u>, 885 F.2d 621 (9th Cir. 1989) ................................17

<u>Carol Gerard v. W.R. Grace & Co. (In re W.R. Grace & Co.)</u>
115 Fed.Appx. 565 (3d Cir. 2004)…...............................................................................21

<u>Celotex Corp. v. Edwards</u>, 514 U.S. 300 (1995) ...................................................19, 21

<u>Clinton v. Jones</u>, 520 U.S. 681 (1997) ..........................................................................29

<u>Coffin v. Malvern Fed. Sav. Bank</u>, 90 F.3d 851 (3d Cir. 1996) ....................................28

<u>Cunningham v. Pension Benefit Guar. Corp. (In re SiMetco, Inc.)</u>,
235 B.R. 609 (N.D. Ohio 1999)......................................................................................17

<u>Durden v. Hydro Flame Corp.</u>, 983 P.2d 943 (Mont. 1999) ..........................................24

<u>Fed. Ins. Co. v. W.R. Grace, et al.</u>, Civil Action Nos. 04-844 and 04-845:
Memorandum and Opinion (D. Del. November 22, 2004) (Buckwalter, J.) ..................18

<u>Feld v. Zale Corp. (In re Zale Corp.)</u>, 62 F.3d 746 (5th Cir. 1995) .............................16, 17, 19, 20

<u>Finstad v. W.R. Grace & Co.</u>, 8 P.3d 778 (Mont. 2000) ...............................................27

<u>Fisher v. Apostolou</u>, 155 F.3d 876 (7th Cir. 1998) ……………………………………..30

<u>Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers</u>
<u>Local No. 70 of Alameda County</u>, 415 U.S. 423 (1974) ................................................13

<u>Great Northern Ry. v. United States</u>, 187 F.Supp. 690 (D. Mont. 1960) ......................24

<u>In re Cary Metal Products, Inc.</u>, 158 B.R. 459 (N.D. Ill. 1993)......................................17

<u>In re Circle Land and Cattle Corp.</u>, 213 B.R. 870 (Bankr. D. Kan. 1997) ....................17

In re Combustion Engineering, Inc., 391 F.3d 190 (3d Cir. 2004) ..........................6, 16-18, 21-28

In re Deltacorp, Inc., 111 B.R. 419 (Bankr. S.D.N.Y. 1990)........................................................17

In re Federal-Mogul Global, Inc., 282 B.R. 301 (D. Del.) (Wolin, J.),
mandamus denied, 300 F.3d 368 (3d Cir. 2002), cert. denied sub nom.,
Daimler Chrysler Corp. v. Official Comm. Of Asbestos Claimants,
537 U.S. 1148 (2003) ............................................................................................... 18, 19, 21-26

In re Johns-Manville Corp., 801 F.2d 60 (2d Cir. 1986) ..............................................................17

In re Jacksen, 105 B.R. 542 (B.A.P. 9th Cir. 1989).....................................................................17

In re Kids Creek Partners, 248 B.R. 554 (Bankr. N.D. Ill. 2000)...................................................17

In re Nunez, 2000 WL 655983 (E.D.N.Y.)..................................................................................17

In re O'Brien Envtl. Energy, Inc., 188 F.3d 116 (3d Cir. 1999) .....................................................3

In re Prof'l Ins. Mgmt., 285 F.3d 268 (3d Cir. 2002).................................................................2, 3

In re Reliance Acceptance Group, Inc., 235 B.R. 548 (D. Del. 1999) .............................................2

In re Resorts Int'l, Inc., 372 F.3d 154 (3d Cir. 2004).................................................................28

In re S.T.R. Corp., 66 B.R. 49 (Bankr. N.D. Ohio 1986) .............................................................17

In re W.R. Grace, et. al., Chapter 11 Case No. 01-01139-JJF.......................................................6

Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,
456 U.S. 694 (1982)..................................................................................................................28

Johns-Manville Corp. v. Asbestos Litig. Group (In re Johns-Manville Corp.),
40 B.R. 219 (S.D.N.Y. 1984).....................................................................................................27

Nutrasweet Co. v. Vit-Mar Enterprises, Inc., 112 F.3d 689 (3d Cir. 1997) ..............................2, 14

Orr v. State of Montana, 106 P.3d 100 (Mont. 2004)..............................................................4, 22

Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984) ............................................................. 18-27

Pan American World Airways, Inc. v. Flight Engineers' Int'l Ass'n.,
306 F.2d 840 (2d Cir. 1962).....................................................................................................15

Plumb v. Fourth Judicial District Court, 927 P.2d 1011 (Mont. 1996) ........................................26

iii

Sampson v. Murray, 415 U.S. 61 (1974) ............................................................2, 13, 14

Solidus Networks, Inc. v. ExcelInnovations, Inc. (In re ExcelInnovations, Inc.),
2007 WL 2555941 (9th Cir. 2007) ..............................................................................30

State, ex rel., Deere & Co. v. District Court of the Fifth Judicial District,
730 P.2d 396 (Mont. 1986)...........................................................................................24

Stonington Partners v. Lernout & Hauspie Speech Products, N.V.,
310 F.3d 118 (3d Cir. 2002)............................................................................................3

United Airlines, Inc. v. U.S. Bank N.A., 406 F.3d 918 (7th Cir. 2005) ...................2, 14

Wedgewood Inv. Fund v. Wedgewood Realty Group, Ltd.
(In re Wedgewood Realty Group, Ltd.), 878 F.2d 693 (3d Cir. 1989) ........................30

W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.),
366 B.R. 295 (Bankr. D. Del. 2007) ...........................................................1, 16, 19, 26

W.R. Grace & Co. v. Libby Claimants (In re W.R. Grace & Co.),
2006 WL 1313190 (D. Del. 2006) .............................................................................2, 9

Zerand-Bernal Group, Inc. v. Cox, 23 F.3d 159 (7th Cir. 1994) ................................16

## Statutes

11 U.S.C. § 105......................................................................................................17, 18

11 U.S.C. § 524(g)........................................................................................................21

28 U.S.C. § 157(a) .......................................................................................................19

28 U.S.C. § 158(a)..........................................................................................................2

28 U.S.C. § 1292(a)(1)....................................................................................................2

28 U.S.C. § 1334(b) ..........................................................................................12, 19, 20

Fed. R. Bankr. P. 7065...............................................................................................2, 13

Fed. R. Bankr. P. 8002(a) ...............................................................................................8

Fed. R. Bankr. P. 8003(c)................................................................................................2

Fed. R. Civ. P. 65(a) ....................................................................................................12

Fed. R. Civ. P. 65(b) .................................................................................................. 2, 8, 13-15

Mont. Code Ann. § 27-1-221 (1997) ..........................................................................................27

Mont. Code Ann. § 27-1-703 (1997) ...................................................................................24, 26

## **Rules**

Third Circuit Internal Operating Procedure 5.5.4 (July 2002)........................................................21

## BASIS OF APPELLATE JURISDICTION

This is an appeal from an order of the Bankruptcy Court enjoining claimants injured by exposure to asbestos from the Debtors' operations in and near Lincoln County, Montana (the "Libby Claimants")[1] from prosecuting their tort claims (the "State Litigation") against the State of Montana (the "State") and their tort claims (the "BNSF Litigation") against the BNSF Railway Company[2] ("BNSF"). Specifically, the order enjoins the State and BNSF Litigation while the Bankruptcy Court takes under advisement requests by Debtor W. R. Grace & Co., Inc. ("Grace")[3] and the State[4] that the Bankruptcy Court reconsider its Order Denying Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana[5] and Memorandum and Opinion,[6] both entered on April 16, 2007 (collectively, the "Injunction Denial Decision"), together with Grace's motion to expand the Preliminary Injunction to include the BNSF Litigation dated March 26, 2007 (the "BNSF Injunction Motion").[7]

The Bankruptcy Court order is reviewable as a preliminary injunction because, whether

---

[1] As identified in the Amended and Restated Verified Statement of Cohn Whitesell & Goldberg LLP and Landis Rath & Cobb LLP Pursuant to Fed. R. Bankr. P. 2019 [Bankr. Case D.I. 15692] filed in the bankruptcy case (Case No. 01-01139 (JFK)), as it may be amended and restated from time to time. The Libby Claimants represented in this appeal include the plaintiffs in what are believed to be all pending lawsuits enjoined by the Bankruptcy Court. However, the Bankruptcy Court's order, by its terms, enjoins new litigation as well, and thus affects additional persons not parties to this appeal.

Items designated by the Libby Claimants, the State, and Grace to be included in the record are from the main bankruptcy case, the bankruptcy adversary proceeding, and the previous appeal to this Court (Docket No. 1:06-CV-26). Accordingly, cites to the record indicate whether the docket reference is from the main bankruptcy case "[Bankr. Case D.I. ___]," the bankruptcy adversary proceeding "[Adversary Proc. D.I. ___]," or the prior appeal to this Court "[Dist. Crt. App. D.I. ___]."

[2] Along with its predecessors, the Great Northern Railway Company, the Burlington Northern Railroad Company, and The Burlington Northern & Santa Fe Railway Company.

[3] Debtors' Motion to Alter and Amend the Court's Order Denying Its Request to Expand the Preliminary Injunction to Include Actions Against the State of Montana. [Adversary Proc. D.I. 427.]

[4] State of Montana's Motion for Reconsideration of Court's Opinion and Order Denying Debtors' Motion for Expansion of Preliminary Injunction Entered April 16, 2007. [Adversary Proc. D.I. 426.]

[5] [Adversary Proc. D.I. 420.]

[6] [Adversary Proc. D.I. 419.] Reported as W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.), 366 B.R. 295 (Bankr. D. Del. 2007).

[7] Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against BNSF dated March 26, 2007. [Adversary Proc. D.I. 389.]

1

or not intended as such by the Bankruptcy Court, it has continued beyond the time permissible under Fed. R. Civ. P. 65(b) (as incorporated by Fed. R. Bankr. P. 7065). See Sampson v. Murray, 415 U.S. 61, 86-88 (1974)(no matter how denominated by the court, a restraining order that extends beyond the time permitted under Rule 65(b) acts as a preliminary injunction and is reviewable as such); United Airlines, Inc. v. U.S. Bank N.A., 406 F.3d 918, 923-24 (7th Cir. 2005); Nutrasweet Co. v. Vit-Mar Enterprises, Inc., 112 F.3d 689, 692-94 (3d Cir. 1997). Accordingly, this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1292(a)(1) which provides this Court with jurisdiction of appeals from interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." See In re Prof'l Ins. Mgmt., 285 F.3d 268, 282 n.16 (3d Cir. 2002)(bankruptcy court orders regarding injunctions are appealable as of right pursuant to 28 U.S.C. § 1292(a)(1)); In re Reliance Acceptance Group, Inc., 235 B.R. 548, 553 (D. Del. 1999)(same). In a prior, related appeal (Docket No. 06-26), with many of the same parties involved here, this Court exercised jurisdiction under 28 U.S.C. § 158(a)(3), not addressing arguments made by the parties that 28 U.S.C. § 1292(a)(1) governed the appeal.[8, 9]

## ISSUES PRESENTED ON APPEAL

1.    Did the Bankruptcy Court have subject matter jurisdiction to enter a "temporary stay" of litigation by the Libby Claimants against a non-debtor party, the State, where the litigation asserts claims against the State for its own tortious conduct and where the Bankruptcy Court itself has ruled that it lacks subject matter jurisdiction to enter a preliminary injunction of

---

[8] Memorandum and Order Dismissing Appeal and Remanding to Bankruptcy Court. [Dist. Crt. App. D.I. 26.] Reported as W.R. Grace & Co. v. Libby Claimants (In re W.R. Grace & Co.), 2006 WL 1313190 (D. Del. 2006).
[9] To the extent that this Court determines that this appeal is from an interlocutory order that requires a motion for leave to appeal under 28 U.S.C. § 158(a), the Libby Claimants request that the Court deem the notice of appeal as a motion for leave to appeal pursuant to Fed. R. Bankr. P. 8003(c) and consider this appeal.

this very litigation?

2.      Did the Bankruptcy Court have subject matter jurisdiction to enter a "temporary stay" of litigation by the Libby Claimants against a non-debtor party, BNSF, where the litigation asserts claims against BNSF for its own tortious conduct and where the Bankruptcy Court has failed to determine that it has subject matter jurisdiction over such litigation?

3.      Did the Bankruptcy Court err in staying the Libby Claimants' pending litigation against the State and BNSF based solely on their own tortious conduct without requiring Grace to establish grounds for entry of an injunction against independent third-party litigation under the stringent standards established by caselaw?

## STANDARD OF REVIEW

Legal determinations of the Bankruptcy Court are reviewed *de novo*, factual findings for clear error and exercises of discretion for abuse thereof. See, e.g., Prof'l Ins. Mgmt., 285 F.3d at 282-83 (3d Cir. 2002). The Bankruptcy Court's application of the law to the facts is reviewed *de novo*. In re O'Brien Envtl. Energy, Inc., 188 F.3d 116, 122 (3d Cir. 1999). Where the Bankruptcy Court does not apply correct legal standards, its decision will be reversed even if the decision entailed an exercise of discretion. See Stonington Partners v. Lernout & Hauspie Speech Products, N.V., 310 F.3d 118, 121 (3d Cir. 2002). Since the issues on this appeal are matters of law or concern application of incorrect legal standards in the issuance of an injunction, the *de novo* standard of review applies.

## STATEMENT OF THE CASE

### Introduction

The suffering of the people of Libby, Montana due to asbestos disease from exposure to Libby asbestos originating from the vermiculite mine and mill operated by Grace is well

chronicled.[10] Through the Center for Asbestos Related Disease (the "CARD Clinic") in Libby, Montana, Dr. Alan C. Whitehouse and Dr. C. Brad Black have diagnosed at least 1,500 patients with asbestos related disease due to exposure to Libby asbestos in or near Lincoln County, Montana.[11] The CARD Clinic regularly treats about 1,200 of these 1,500 patients.[12] Since the CARD Clinic opened in 2000, more than 65 patients have died of cancer or respiratory failure related to asbestos disease.[13] Since April 2, 2001, the date Grace filed its Chapter 11 petition, 41 clients of the firm McGarvey, Heberling, Sullivan & McGarvey in Kalispell, Montana have died of asbestos related disease.[14] Currently the CARD Clinic has over 80 patients on oxygen, and over 100 patients are severely limited, with short life expectancy.[15] Most of these require 24 hour care.[16]

But the devastating disease in Libby, said to be 10 times more deadly than more common types of asbestosis, was not caused by Grace alone. The State and BNSF also engaged in tortious conduct injuring the people of Libby. As to the State, the Montana Supreme Court in Orr v. State of Montana, 106 P.3d 100 (Mont. 2004), held that under the state's Industrial Hygiene Act, "the State had statutory duties to the public and persons confronted with workplace hazards," Orr, 106 P.3d at 110, ¶ 40, and that "the State had discretion to determine what information to gather, but once that information was gathered, it had no discretion about whether to distribute it." Id. at 108, ¶ 25. The court noted: "[I]t appears that the record is bereft of any actions taken by the State to warn the miners or the Libby townspeople of their plight." Id. at 110, ¶ 37. As to BNSF, the Libby Claimants' state court actions against this railroad company

---

[10] [Adversary Proc. D.I. 417, p.3.]
[11] [Id., Ex. C, ¶2.]
[12] [Id.]
[13] [Id., ¶7.]
[14] [Id., Ex. D, ¶4.]
[15] [Id., Ex. C, ¶7.]
[16] [Id.]

4

are premised on common negligence and strict liability claims relating to BNSF's operations on

BNSF's property by BNSF personnel. The cases against BNSF are based upon proof that BNSF

knew specifically of the asbestos hazard arising from BNSF's operations—including asbestos

contamination on BNSF's property and transport of asbestos by BNSF—yet failed to meet

industrial hygiene standards to protect its employees and Libby residents in neighboring areas.

　　　Libby Claimants continue to suffer and die, without medical coverage for end stage care.

The Grace Libby Medical Program does not pay for nursing home care or 24-hour home care for

patients with asbestos disease. The affidavits of those who have performed the 24-hour home

care, and of those who are currently performing it, show enormous suffering and terrible stress.[17]

For the Libby Claimants, especially those on oxygen, these services are critical as they are

unable to care for themselves, leaving exhausted family members to bear the burden, with no

help from Grace. The case of Danny Freebury is illustrative of the plight of many Libby

Claimants. Danny Freebury is 59 years old and resided in Libby from 1955-1964 and again from

2000 to date.[18] He is a single parent to a son age 17 and a daughter age 15. Danny is wheelchair

bound. His son does the cooking, housekeeping, shopping and home maintenance, and feeds the

animals.[19] His son comes home from high school each day to cook lunch and check on his

father.[20] Danny Freebury states he wants his son to go to college next Fall and he is feeling bad

about leaving me. Danny Freebury needs eight hours per day of home assistance, skilled nursing

visits, and a case manager to coordinate medical assistance.[21]

　　　Grace has not only failed to provide the care that Danny Freebury and many other Libby

---

[17] [Adversary Proc. D.I. 363, Ex. A-N.]
[18] [Adversary Proc. D.I. 417, Ex. A.]
[19] [Id., ¶ 7.]
[20] [Id.]
[21] [Id., ¶ 8.]

Claimants need and deserve, but has sought to prevent them from obtaining compensation in the tort system from the State and BNSF – recognized wrongdoers with no special relationship to Grace or its Chapter 11 case. Grace's attempt to extend to the State and BNSF the preliminary injunction that Grace obtained early on its bankruptcy case to enjoin asbestos-related claims against insurers and other affiliates of Grace (the "Preliminary Injunction") goes far beyond the original purpose of the Preliminary Injunction, and far beyond the typical case where the debtor in a mass tort case seeks to enjoin suits against its insurers and affiliates to protect the bankruptcy estate. Rather, in direct contradiction to the consistent teachings of the Third Circuit—most recently in In re Combustion Engineering, Inc., 391 F.3d 190 (3d Cir. 2004)—Grace seeks to shield a non-debtor party from on-going litigation that cannot, as a matter of law, have a direct impact on Grace's estate. In Combustion Engineering and two earlier decisions, the Third Circuit concluded that the bankruptcy court did not have jurisdiction to enjoin litigation among non-debtor parties merely because the defendant claimed a right of contribution or indemnity against the debtor – as the State and BNSF do here. The Bankruptcy Court itself, in the Injunction Denial Decision, held that it lacks subject matter jurisdiction to enjoin the State Litigation. Yet in response to a motion for reconsideration of that decision and Grace's motion for an even further extension of the Preliminary Injunction, this time to enjoin the BNSF Litigation, the Bankruptcy Court entered a stay of unspecified duration against the State Litigation and the BNSF Litigation.

### Procedural Background

On April 2, 2001 (the "Petition Date"), Grace filed a petition for relief under Chapter 11 of the Code.[22] On the same date, Grace filed an adversary complaint seeking, *inter alia*, the

---

[22] In re W.R. Grace, *et. al.*, Chapter 11 Case No. 01-01139 (JKF).

Preliminary Injunction.[23]  The Bankruptcy Court entered a temporary restraining order on April 2, 2001,[24] and on May 3, 2001 entered the Preliminary Injunction sought by Grace.[25]  On January 22, 2002, the Bankruptcy Court entered an order modifying the Preliminary Injunction to expand its scope to include certain additional affiliates of Grace.[26]

The State Litigation

Prior to and after the Petition Date, the Libby Claimants commenced the State Litigation in the Montana District Courts for Lincoln, Cascade, and Lewis and Clark Counties against the State.[27]  The State Litigation proceeded uninterrupted by and without involvement of Grace until August 22, 2005, more than four years after Grace entered Chapter 11.[28]  On that day, Grace filed a motion[29] (the "State Injunction Motion") to expand the Preliminary Injunction to include the State Litigation.  The Libby Claimants filed an opposition to the State Injunction Motion[30] joined in by the PI Committee representing all asbestos personal injury claimants.[31]

On December 19, 2005, the Bankruptcy Court held a hearing on the State Injunction Motion.[32]  At the conclusion of the hearing, the Bankruptcy Court stated that it would take the State Injunction Motion under advisement.[33]  In response, the State asked the Bankruptcy Court to "stay the Libby Claimants from taking discovery or proceeding any further with the [State

---

[23] [Adversary Proc. D.I.  359, ¶ 3.]
[24] [Id.]
[25] [Id.]
[26] [Adversary Proc. D.I. 87.]
[27] [Adversary Proc. D.I. 363, p. 5.]
[28] [Id.]
[29] Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana. [Adversary Proc. D.I. 359.]
[30] Opposition of Libby Claimants to Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana. [Adversary Proc. D.I. 363.]
[31] Joinder of the Official Committee of Asbestos Personal Injury Claimants in the Opposition of Libby Claimants to Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana.  [Adversary Proc. D.I. 365.]  Debtors' Reply in Support of Their Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana.  [Adversary Proc. D.I. 367.]
[32] [Bankr. Case D.I. 11473.]
[33] [Id., p. 199:21.]

Litigation] until the [Bankruptcy] Court renders a decision on [the State Injunction Motion]."[34]
The Bankruptcy Court indicated that it considered the extension of the stay appropriate and
sought the Libby Claimants' agreement to such a stay.[35] Asked by the Libby Claimants for an
indication of the time period within which the Bankruptcy Court would render a decision, the
Bankruptcy Court suggested it could be more than a year.[36] Having previously entered into a
voluntary stay in a separate matter wherein the Bankruptcy Court took ten months to render its
decision,[37] the Libby Claimants informed the Bankruptcy Court that they would not assent to the
stay.[38] The Bankruptcy Court then orally entered a stay,[39] followed one month later by entry of a
written order on January 17, 2006.[40]

The Libby Claimants appealed to this Court.[41] The Libby Claimants asserted (as they do
in this appeal) that the Bankruptcy Court's order was reviewable as a preliminary injunction,
regardless of whether it was denominated as such by the Bankruptcy Court, because it provided
for a stay continuing beyond the time permissible under Fed. R. Civ. P. 65(b).[42] On May 10,
2006, after briefing and oral argument, this Court determined:

> The Court believes, generally, that the conditions necessary for the Court
> to entertain this interlocutory appeal are not present in this case. However,
> the Court thinks the indefinite nature of the Bankruptcy Court's stay order
> may present an exceptional circumstance. Therefore, the Court exercises

---

[34] [Id., pp. 200:21-25 and 201:1-5.]
[35] [Id., p. 201:7-11.]
[36] [Id., p. 202:15-25.]
[37] In a similar contested proceeding concerning Grace's attempt to further expand the Preliminary Injunction to cover Montana Vermiculite Company, the Bankruptcy Court asked the Libby Claimants if they would continue a voluntary stay pending its ruling on Grace's motion. The Libby Claimants acceded to the Bankruptcy Court's request. The decision was not rendered until 10 months later. [Adversary Proc. D.I. 298 and 299.]
[38] [Bankr. Case D.I. 11473, p.203:1-7.]
[39] [Id., p. 203:8.]
[40] [Adversary Proc. D.I. 376.]
[41] Notice of Appeal dated December 29, 2005. [Adversary Proc. D.I. 373.] On January 19, 2006, the Libby Claimants filed an Amendment to Notice of Appeal, clarifying that the appeal was of the written order, which replaced and superseded the oral order announced in open court on December 19, 2005. [Adversary Proc. D.I. 378.] Pursuant to Fed. R. Bankr. P. 8002(a), "a notice of appeal filed after the announcement of a decision or order but before entry of the judgment, order, or decree shall be treated as filed after such entry and on the day thereof."
[42] Brief of Libby Claimants. [Dist. Crt. App. D.I. 5.]

> jurisdiction under 28 U.S.C. § 158(a)(3) for the limited purpose of
> addressing the indefiniteness of the Bankruptcy Court's stay order. A time
> frame in which the Bankruptcy Court will render its decision on the
> Debtors' motion to expand the preliminary injunction to include actions
> against the State of Montana would be appropriate in light of the indefinite
> stay order presently in place. However, the Bankruptcy Court is, in the
> first instance, best suited to determine that time frame.

W.R. Grace v. Libby Claimants (In re W.R. Grace & Co.), 2006 WL 1313190, *1 (D. Del.

2006).[43] Accordingly, this Court remanded the matter to the Bankruptcy Court so that it could

"advise the parties of a specific date on or before which it expects to render its decision on

Debtors' motion to expand the preliminary injunction." Id.

The Bankruptcy Court ignored this Court's directive and never provided the parties with a

date upon which it would decide the State Injunction Motion. More than 11 months after this

Court's ruling (and 16 months from the entry of the initial stay order), the Bankruptcy Court

ruled in the Injunction Denial Decision on April 16, 2007, that "related-to subject matter

jurisdiction does not exist for the purpose of expanding the injunction to include the [State

Litigation]."

In response to the Injunction Denial Decision, on April 26, 2007, Grace[44] and the State[45]

filed motions to reconsider the Injunction Denial Decision (collectively, the "Motions for

Reconsideration"). On May 14, 2007, the Libby Claimants[46] and the PI Committee[47] filed

oppositions to the Motions for Reconsideration.

---

[43] [Dist. Crt. App. D.I. 26.]
[44] Debtors' Motion to Alter and Amend the Court's Order Denying Its Request to Expand the Preliminary Injunction to Include Actions Against the State of Montana. [Adversary Proc. D.I. 427.]
[45] State of Montana's Motion for Reconsideration of Court's Opinion and Order Denying Debtors' Motion for Expansion of Preliminary Injunction Entered on April 16, 2007. [Adversary Proc. D.I. 426.]
[46] Libby Claimants' Objection to Motions Filed by Debtors and State of Montana to Reconsider Order Denying Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana. [Adversary Proc. D.I. 442.]
[47] Opposition of the Official Committee of Asbestos Personal Injury Claimants to the Debtors' and the State of Montana's Motions to Reconsider the Court's Decision Denying a Stay of Litigation Against Montana. [Adversary Proc. D.I. 443.]

### The BNSF Litigation

In the meantime, Grace had moved to extend the Preliminary Injunction even further

beyond its original reach.  On March 26, 2007, Grace filed a motion to expand the Preliminary

Injunction to include the BNSF Litigation (the "BNSF Injunction Motion").[48]  Until the filing of

the BNSF Injunction Motion, the BNSF Litigation proceeded uninterrupted by and without

involvement of Grace.

On April 13, 2007, three days before the Bankruptcy Court's Injunction Denial Decision

was issued, the Libby Claimants filed their opposition to the BNSF Injunction Motion.[49]  The PI

Committee filed their opposition on the same day.[50]  In addition to the Libby Claimants' and the

PI Committee's oppositions, BNSF itself filed an opposition to the BNSF Injunction Motion.[51]

On April 24, 2007, Grace filed its reply in support of the BNSF Injunction Motion.[52]

### The Bankruptcy Court Stay Order

On May 21, 2007, the Bankruptcy Court heard oral argument on the Motions for

Reconsideration of the Injunction Denial Decision, along with the BNSF Injunction Motion.

Because of the common issues between the Injunction Denial Decision (relating to the State

Litigation) and the BNSF Injunction Motion, all counsel concerned with either the BNSF

Injunction Motion or reconsideration of the Injunction Denial Decision addressed the

---

[48] Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against BNSF. [Adversary Proc. D.I. 398.]

[49] Opposition of Libby Claimants to Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against BNSF. [Adversary Proc. D.I. 417.]

[50] Opposition of the Official Committee of Asbestos Personal Injury Claimants to the Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against BNSF. [Adversary Proc. D.I. 414.]

[51] BNSF Railway Company's Response to Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against BNSF. [Adversary Proc. D.I. 413.]

[52] Debtors' Reply in Support of Their Motion to Expand the Preliminary Injunction to Include Actions Against BNSF. [Adversary Proc. D.I. 424.]

Bankruptcy Court at that time. Upon hearing all of the arguments, the Bankruptcy Court announced that it would take the matters under advisement.[53]

On June 6, 2007, the Bankruptcy Court entered an order intending to stay the State and BNSF Litigation pending its ruling on the Motions for Reconsideration and the BNSF Injunction Motion.[54] The order, however, caused substantial confusion as it could have been interpreted to stay cases against any and all defendants nationwide, not just the State or BNSF. To address the Bankruptcy Court's error, the Libby Claimants[55] and the PI Committee[56] filed motions to alter or amend the order (the "Motions to Alter Stay Order"). The Motions to Alter Stay Order argued that the stays, to the extent appropriate at all, should not exceed that which Grace or the State has requested. BNSF filed a joinder to the Libby Claimants' motion.[57] On July 6, 2007, Grace[58] and the State[59] filed responses to the Motions to Alter Stay Order.

On July 23, 2007, the Bankruptcy Court held a hearing on the Motions to Alter the Stay Order.[60] At the outset of the hearing, the Bankruptcy Court acknowledged that the June 6 order was overly broad and should be limited to the State and BNSF Litigation.[61] In response to the

---

[53] [Bankr. Case D.I. 15948, p. 94:1.]

[54] In no filed pleading related to the BNSF Injunction Motion or Motions for Reconsideration and at no time during the argument of these matters—including after the Bankruptcy Court announced that it would take the matters under advisement—did any party request that a temporary stay of the State Litigation or the BNSF Litigation be entered. It was only after counsel to the Libby Claimants had been excused that it was suggested that the Bankruptcy Court enter a "temporary stay" of the State Litigation. The Bankruptcy Court directed that an order imposing such stay be prepared and submitted. No request for a stay of the BNSF Litigation was made by any pleading or during the hearing on the BNSF Injunction Motion. Nevertheless, the State submitted a proposed order to stay the State Litigation [Bankr. Case D.I. 15821] and Grace submitted a proposed order to stay the BNSF Litigation [Adversary Proc. D.I. 446]. The Libby Claimants [Adversary Proc. D.I. 447.] and the PI Committee [Bankr. Case D.I. 15821 and [Adversary Proc. D.I. 448.] opposed the entry of the proposed orders.

[55] [Adversary Proc. D.I. 459.]

[56] [Adversary Proc. D.I. 459.]

[57] [Adversary Proc. D.I. 461.]

[58] Debtors' Consolidated Response to Motions to Alter and Amend the Court's Temporary Stay Order Regarding Actions Against BNSF and the State of Montana. [Adversary Proc. D.I. 463.]

[59] Limited Response of State of Montana to Libby Claimants' Motion to Alter or Amend the Court's Modified Order Regarding the Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against BNSF. [Adversary Proc. D.I. 462.]

[60] [Bankr. Case D.I. 16445.]

[61] [Id. at p. 85:5.]

Libby Claimants' argument that the Court lacked authority to enter such an order in an injunction proceeding, the Bankruptcy Court stated: "I think it's still appropriate to keep in place the preliminary injunction. I will attempt to get an opinion out very promptly. I'm calling this a temporary stay."[62] Pursuant to the Bankruptcy Court's directive, Grace prepared a form of order to reflect the Bankruptcy Court's rulings, which was submitted to the Bankruptcy Court under a certification of counsel on August 6, 2007.[63] On August 29, 2007, the Bankruptcy Court entered the order staying the State Litigation and BNSF Litigation, pending the Bankruptcy Court's rulings on the Motions for Reconsideration and the BNSF Injunction Motion (the "Stay Order").[64] On August 30, 2007, the Libby Claimants filed a notice of appeal of the Stay Order.[65]

## SUMMARY OF ARGUMENT

The Libby Claimants respectfully submit that the Stay Order should be vacated because (1) the Stay Order constitutes a preliminary injunction entered in violation of Fed. R. Civ. P. 65(a), (2) the Bankruptcy Court lacked subject matter jurisdiction to enjoin litigation between non-debtor parties not related to the Grace bankruptcy within the meaning of 28 U.S.C. § 1334(b) and long-established Third Circuit precedent, and (3) the Stay Order was entered without meeting (or even considering) the four-part test for issuance of an injunction and other requirements to stay third-party litigation in the context of a Chapter 11 case.

## ARGUMENT

**I.    The Stay Order Constitutes an Improperly Entered Preliminary Injunction and Should be Overturned by this Court**

The Stay Order provides:

---

[62] [Id. at p. 97-98:24-25, 1.]
[63] [Adversary Proc. D.I. 465.]
[64] [Adversary Proc. D.I. 466.]
[65] [Adversary Proc. D.I. 467.]

> [P]ending the Court's ruling on the Injunction Motions, all actions
> commenced against the State of Montana and/or BNSF that arise out of
> alleged exposure to asbestos indirectly or directly caused by the Debtors
> (the "Montana Actions"), shall be temporarily stayed pending the Court's
> ruling on the Injunction Motions.

Since this order stays the State Litigation and the BNSF Litigation, it is, self-evidently, an

injunction. Injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure.[66]

Depending on the notice given (not an issue here) or the duration (which is very much the issue),

an injunction is either a temporary restraining order or a preliminary injunction.

Other than by consent, a temporary restraining order may not exceed ten days' duration,

except that "for good cause shown" the order may be extended for another ten days. Fed. R. Civ.

P. 65(b). Although the order provides that the State Litigation and the BNSF Litigation are

"temporarily stayed," the Stay Order by its terms has no expiration date. The Stay Order is not a

temporary restraining order because "temporary restraining orders must expire by their own

terms within 10 days after entry, 20 days if good cause is shown." Granny Goose Foods. Inc. v.

Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County, 415 U.S.

423, 433 (1974). A temporary restraining order of potentially unlimited duration is reviewed as

a preliminary injunction. Sampson v. Murray, 415 U.S. 61, 87-88 (1974). In Sampson, the

Supreme Court ruled that because of the strict limitations on the scope of temporary restraining

orders, any such order that continues beyond the time permissible in Fed. R. Civ. P. 65(b) should

be construed as a preliminary injunction so as to be immediately appealable. Id. at 85-86. In so

holding, the Court observed that if a court "were able to shield its orders from appellate review

merely by designating them as temporary restraining orders, rather than as preliminary

---

[66] Since the injunction was sought in a bankruptcy case, Grace brought an adversary proceeding governed by Rules 7001 *et seq.* of the Federal Rules of Bankruptcy Procedure. With a modification not pertinent here, Fed. R. Civ. P. 65 is made applicable to adversary proceedings by Fed. R. Bankr. P. 7065. Other than Rule 7065, there is no process or authority for issuance of an injunction in a bankruptcy case, and Grace has cited none.

injunctions, [the court] would have virtually unlimited authority over the parties in an injunctive proceeding." Id. at 86-87.

Applying Sampson, the Third Circuit held in Nutrasweet Co.v. Vit-Mar Enterprises, Inc., 112 F.3d 689 (3d Cir. 1997), that a district court's temporary restraining order that had remained in effect for 77 days at the time defendants filed their notice of appeal was the equivalent of a preliminary injunction, and thus subject to appellate review. Id. at 694. The court explained:

> [T]emporary restraining orders . . . cannot be continued indefinitely without observance of the safeguards required for entry of a preliminary injunction and that temporary restraining orders of indefinite duration, whether or not issued with notice, are subject to appellate review. The most prevalent view is that a temporary restraining order, even if issued with notice, cannot be continued beyond the periods prescribed in Fed. R. Civ. P. 65(b) without being treated as the equivalent of a preliminary injunction and thus subject to appellate review.

Id. at 692.

Other courts of appeal treat with similar gravity the time limit for a stay to escape review under the preliminary injunction standard. Said the Seventh Circuit:

> Temporary restraining orders that extend past 20 days are reviewable as preliminary injunctions, no matter what the rendering judge may have called them.

United Airlines, Inc. v. U.S. Bank N.A., 406 F.3d 918, 923 (7th Cir. 2005) (citing Sampson, 415 U.S. at 86-88). As explained by the Court of Appeals for the Second Circuit:

> [Fed. R. Civ. P. 65(b)] contemplates that notice and hearing shall result in an appropriate adjudication, i.e. the issuance or denial of a preliminary injunction, **not an extension of the temporary stay**.
>
> The purpose of a temporary restraining order is to preserve an existing situation in status quo until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction. Such an order is necessarily limited to a very brief period because what may later prove to be a right of the party who is restrained is suspended before even a tentative adjudication as to that right has been had. . . . It is because the remedy is so drastic and may have such adverse consequences that the authority to issue temporary restraining orders is carefully hedged in Rule

14

> 65(b) by protective provisions. And the most important of these protective
> provisions is the limitation on the time during which such an order can
> continue to be effective.

Pan American World Airways, Inc. v. Flight Engineers' Int'l Ass'n., 306 F.2d 840, 842-43 (2d

Cir. 1962) (emphasis added).

This case exemplifies the injustice that Rule 65(b) proscribes. Since December 2005, the

Libby Claimants have been barred by "temporary" stays from pursuing the State Litigation.

They appealed to this Court for relief. Instead of vacating the stay or requiring the Bankruptcy

Court to rule on the merits within the 20 days required by Rule 65(b), this Court in May 2006

directed the Bankruptcy Court to set its own timetable for a ruling. The Bankruptcy Court

ignored that order. Finally, almost a year later, the Bankruptcy Court ruled. The Bankruptcy

Court determined that it lacked subject matter jurisdiction to enjoin the State Litigation—

complete vindication for the Libby Claimants, except that the Bankruptcy Court then entered

another "temporary" stay while having under advisement the motions for reconsideration filed by

Grace and the State. It has now been more than six months since the Bankruptcy Court's

determination that it has no jurisdiction to stay the State Litigation. Yet the "temporary" stay

remains in effect, barring the Libby Claimants from pursuing the State Litigation and now also

the BNSF Litigation where the jurisdictional considerations are almost identical.

Libby Claimants continue to suffer and die while their quest for justice against the State

and BNSF is barred by arbitrary judicial action in blatant disregard for the requirements of Rule

65(b) decreed with crystalline clarity by the United States Supreme Court and the Court of

Appeals for the Third Circuit. It is time to bring this sorry chapter in the history of American

justice to a close. The Stay Order should be vacated immediately, both by reason of having been

improperly entered as demonstrated above, and because, as will be demonstrated below, subject

matter jurisdiction does not exist to enjoin the State Litigation or the BNSF Litigation, nor can the standards for entry of such an injunction be met.

## II.    The Bankruptcy Court Lacked Subject Matter Jurisdiction to Enjoin the State Litigation or the BNSF Litigation

The Bankruptcy Court correctly held in the Injunction Denial Decision that before enjoining litigation between third parties, the Bankruptcy Court must determine its own subject matter jurisdiction over the litigation sought to be enjoined. W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.), 366 B.R. 295, 299 (Bankr. D. Del. 2007). Yet the Bankruptcy Court failed to do so in connection with the Stay Order. For the same reasons that the Bankruptcy Court itself ruled in the Injunction Denial Decision that it lacked jurisdiction to enjoin the State Litigation, the Bankruptcy Court lacked jurisdiction to issue the Stay Order enjoining that same litigation and also enjoining the BNSF Litigation.

### A.    Subject Matter Jurisdiction is a Threshold Requirement

A bankruptcy court has subject matter jurisdiction to enjoin litigation among third parties only if the bankruptcy court has subject matter jurisdiction over the litigation sought to be enjoined. In re Combustion Engineering, Inc., 391 F.3d 190, 224-25 (3d Cir. 2004); Feld v. Zale Corp. (In re Zale Corp.), 62 F.3d 746, 751 (5th Cir. 1995); see also Zerand-Bernal Group, Inc. v. Cox, 23 F.3d 159, 162 (7th Cir. 1994). In Combustion Engineering, the Third Circuit defined the threshold issue as "whether the District Court properly exercised 'related to' jurisdiction over the non-derivative asbestos claims against non-debtors Basic and Lummus" when it enjoined those claims. Combustion Engineering, 391 F.2d at 224. The court cautioned that "[w]hile aspects of the § 105(a) analysis [concerning the merits of the injunction] may be relevant to the 'related to' jurisdiction inquiry, these inquiries are analytically distinct." Id. The court went on to conduct an extensive analysis of the jurisdictional issue, concluding that the proponents of the injunction

16

had failed to establish the court's jurisdiction to enter it. Id. at 225-33. Reaching the merits of

the injunction under Section 105(a) only in order to determine whether it would be pointless to

remand for more fact-finding on the issue of jurisdiction, id. at 233, the court then conducted a

separate and equally extensive analysis of whether the Bankruptcy Code permitted entry of the

injunction. Id. 233-39.

> The Fifth Circuit similarly explained in Zale:

>> Subject matter jurisdiction and power [under Section 105] are separate
>> prerequisites to the court's capacity to act. Subject matter jurisdiction is
>> the court's authority to entertain an action between the parties before it.
>> Power under Section 105 is the scope and forms of relief the court may
>> order in an action in which it has jurisdiction.

Zale, 62 F.3d at 751 (citing American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American

Hardwoods, Inc.), 885 F.2d 621, 624 (9th Cir. 1989)).

The requirement for jurisdiction over the target litigation reflects the well-established

principle that Section 105 of the Bankruptcy Code (the bankruptcy equivalent of the All Writs

Act) "does not provide an independent source of federal subject matter jurisdiction."

Combustion Engineering, 391 F.3d at 225. Accord, In re Johns-Manville Corp., 801 F.2d 60, 63

(2d Cir. 1986); In re Jacksen, 105 B.R. 542, 544 (B.A.P. 9th Cir. 1989); In re Nunez, 2000 WL

655983, at *8 (E.D.N.Y.); Cunningham v. Pension Benefit Guar. Corp. (In re SiMetco, Inc.), 235

B.R. 609, 618 (N.D. Ohio 1999); In re Cary Metal Products, Inc., 158 B.R. 459, 465 (N.D. Ill.

1993); In re Kids Creek Partners, 248 B.R. 554, 561 (Bankr. N.D. Ill. 2000); In re Circle Land

and Cattle Corp., 213 B.R. 870, 877 (Bankr. D. Kan. 1997). Section 105(a) is properly viewed

as only an "aid to the exercise of jurisdiction." In re Deltacorp, Inc., 111 B.R. 419, 420 (Bankr.

S.D.N.Y. 1990). A bankruptcy court may not invoke Section 105 to give the court jurisdiction

that it does not already possess. Combustion Engineering, 391 F.3d at 224-25; In re S.T.R.

17

Corp., 66 B.R. 49, 51 (Bankr. N.D. Ohio 1986); compare Fed. Ins. Co. v. W.R. Grace, et al.,

Civil Action Nos. 04-844 and 04-845: Memorandum and Opinion (D. Del. November 22, 2004)

(Buckwalter, J.)(specifying Section 105(a) as the procedural vehicle for the appointment of a

futures representative where jurisdiction to make such an appointment was conferred by Section

524(g)).

In sum, before the Bankruptcy Court could even consider the merits of Grace's request to

further enjoin the State Litigation and Grace's request to enjoin the BNSF Litigation, the

Bankruptcy Court was required to determine whether it had jurisdiction over the State Litigation

and BNSF Litigation. The Bankruptcy Court failed to do so. For that reason alone, the Stay

Order must be vacated. But in any event, as demonstrated below, established Third Circuit

precedent makes it clear that the Bankruptcy Court lacks jurisdiction to enjoin either the State

Litigation or the BNSF Litigation.

**B.      The Bankruptcy Court Lacked Subject Matter Jurisdiction
          to Enter the Stay Order Enjoining the State Litigation**

In the Injunction Denial Decision, the Bankruptcy Court correctly determined that

Combustion Engineering—building on the line of Third Circuit cases that includes Pacor, Inc. v.

Higgins, 743 F.2d 984 (3d Cir. 1984) and In re Federal-Mogul Global, Inc., 282 B.R. 301 (D.

Del.), mandamus denied, 300 F.3d 368 (3d Cir. 2002), cert. denied sub nom., Daimler Chrysler

Corp. v. Official Comm. of Asbestos Claimants, 537 U.S. 1148 (2003)—required the conclusion

that the Bankruptcy Court lacks jurisdiction to enjoin the State Litigation. As stated in the words

of the Bankruptcy Court:

- "While aspects of the §105(a) analysis may be relevant to 'related-to'
  jurisdiction, the two inquiries are analytically distinct. In re Combustion
  Engineering, Inc., 391 F.3d 190, 224-25 (3d Cir. 2004). Section 105(a) 'does
  not provide an independent source of federal subject matter jurisdiction.' Id.
  at 225. Therefore, this court must establish subject matter jurisdiction before

18

considering the merits of a §105(a) injunction." Chakarian, 366 B.R. at 299.

- "[In Federal-Mogul] [t]he bankruptcy court accurately reiterated the holding of Pacor stating that jurisdiction exists where 'the potential impact on the debtor's estate would have been direct with no intervening adjudication or joinder of issue necessary for judgment against the non-debtor to affect assets, re-prioritize creditors and thwart the bankruptcy court's administration of the estate.'" Chakarian, 366 B.R. at 300 (citing Federal-Mogul Global, Inc., 282 B.R. at 307).

- "The position [of] claims in the [State Litigation] is nearly identical to the claims in Pacor and Federal-Mogul. Before any effect on the Debtors can be realized, the State of Montana must first be found liable in state court and then pursue its claim for indemnification in bankruptcy court." Chakarian, 366 B.R. at 301.

- "Here ... however, as in Pacor and Federal-Mogul, the [State Litigation] will not be binding on the estate and will not have a direct impact on the estate without additional intervening adjudication." Chakarian, 366 B.R. at 302.

- "Without a finding of ... jurisdiction, it is unnecessary to conduct an analysis of whether an injunction under §105(a) is appropriate." Chakarian, 366 B.R. at 302.

Grounded as it is in controlling Third Circuit precedent, the foregoing analysis is unassailable as will be demonstrated below.

The jurisdiction of bankruptcy courts is grounded in and limited by statute. 28 U.S.C. §1334(b); 28 U.S.C. § 157(a). Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." In turn, Section 157(a) permits the district court to refer "any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . to the bankruptcy judges for the district." Celotex Corp. v. Edwards, 514 U.S. 300, 307 (1995). In the present case, since the claims of the Libby Claimants against the State arose neither under the Bankruptcy Code nor in Grace's Chapter 11 case, the sole issue is whether those claims are "related to" the Chapter 11 case.

Courts have universally adopted the test first articulated by the Third Circuit in <u>Pacor, Inc. v. Higgins</u>, 743 F.2d 984, 994 (3d Cir. 1984), for determining whether related-to jurisdiction exists:

> A matter is related to the bankruptcy case for §1334 purposes if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy . . . . Moreover, an action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and in any way impacts upon the handling and administration of the bankruptcy estate.

Applying this standard, the Third Circuit held that related-to jurisdiction did not extend to personal injury litigation between non-debtor parties, neither of them related to the Chapter 11 debtor, stating:

> At best, [the personal injury lawsuit] is a mere precursor to the potential third party claim for indemnification by Pacor against Manville. Yet the outcome of the [the personal injury lawsuit] would in no way bind Manville, in that it could not determine any rights, liabilities, or course of action of the debtor. Since Manville is not a party to the [the personal injury lawsuit], it could not be bound by res judicata or collateral estoppel.

<u>Id</u>. at 995. Accordingly, the Third Circuit concluded:

> there would be **no automatic creation of liability** against Manville on account of a judgment against Pacor. Pacor is not a contractual guarantor of Manville, nor has Manville agreed to indemnify Pacor, and thus a judgment in the [the personal injury lawsuit] could not give rise to any automatic liability on the part of the estate. All issues regarding Manville's possible liability would be resolved in the subsequent third party impleader action . . . . There would therefore be no effect on administration of the estate, until such time as Pacor may choose to pursue its third party claim.

<u>Id</u>. at 995-96 (emphasis added). Since the Chapter 11 debtor could not be bound **automatically** by the litigation, the litigation could not affect the estate in any way and thus was not related to the debtor's Chapter 11 case. <u>Id</u>.

Pacor has been expressly approved by the United States Supreme Court. Celotex, 514

U.S. at 308. And the Third Circuit has confirmed the on-going vitality of Pacor in Combustion

Engineering, 391 F.3d at 225-27,[67] and In re Federal-Mogul Global, Inc., 282 B.R. 301 (D. Del.),

mandamus denied, 300 F.3d 368 (3d Cir. 2002), cert. denied sub nom. Daimler Chrysler Corp. v.

Official Comm. of Asbestos Claimants, 537 U.S. 1148 (2003).

In Combustion Engineering, a prepackaged Chapter 11 case, the plan provided for all

asbestos claims—including claims against non-debtor affiliates Basic, Inc. and ABB Lummus

Global, Inc.—to be channeled to a post-confirmation trust created under Section 524(g) of the

Bankruptcy Code. The plan provided for all three entities, along with their respective parent

companies, to make substantial contributions of cash and other assets to the post-confirmation

trust. Fulfilling a prerequisite to these contributions, the bankruptcy court entered an injunction

under Section 105 barring the assertion of asbestos claims against Basic and Lummus. After a

thorough analysis of Pacor and Federal-Mogul, the Third Circuit held that related-to jurisdiction

cannot be extended to claims of asbestos plaintiffs against the non-debtors (Basic and Lummus)

simply because of their corporate affiliation with the debtor or because the substantial financial

---

[67] Grace failed to cite Combustion Engineering in the State Injunction Motion and instead pointed the Bankruptcy Court to the Third Circuit's opinion in Carol Gerard v. W.R. Grace & Co. (In re W.R. Grace & Co.), 115 Fed.Appx. 565 (3d Cir. 2004), which was expressly rendered as "non-precedential." This may be taken as an indication that Grace knows it must lose unless this Court incorrectly applies Gerard. That decision vacated a District Court order that the Bankruptcy Court lacked related-to jurisdiction for the Bankruptcy Court to expand the Preliminary Injunction to include the Libby Claimants' independent actions against Maryland Casualty Company. Although Gerard rested largely upon an odd procedural posture that does not exist here—the panel determined that the Libby Claimants had the burden of proof since the appeal was not from the Bankruptcy Court's imposition of the injunction but rather the Bankruptcy Court's refusal to clarify and/or reconsider the injunction—the decision is at odds with Combustion Engineering in permitting an injunction against litigation among third parties without requiring that the court be able to exercise jurisdiction over that litigation. In this regard, it is overruled by Combustion Engineering, a later decision and one that was expressly rendered on a precedential basis. Under Third Circuit rules, this means that the decision was circulated to the full court, including the two members of the Gerard panel who did not also serve on the Combustion Engineering panel. See Third Circuit Internal Operating Procedure 5.5.4 (July 2002). In the matter before the Bankruptcy Court, Grace indisputably had the burden of proof and the Bankruptcy Court was bound by Combustion Engineering's requirement that there exist related-to jurisdiction over the State Litigation before the Bankruptcy Court may consider enjoining it.

contributions to the plan by the non-debtor affiliates depended on a channeling injunction in their favor. Combustion Engineering, 391 F.3d at 225-27. Accordingly, the court considered the other factors advanced by the debtor as grounds for related-to jurisdiction: a unity of interest based on the debtor's obligations of indemnity or contribution to the non-debtor affiliates, and the existence of shared insurance between the debtor and the affiliates.[68]

The Combustion Engineering court rejected the debtor's assertion that the non-debtor affiliates' potential rights of contribution or indemnity from the debtor established related-to jurisdiction. Id. at 230-32. In so doing, the court specifically rejected the debtor's contention that common production sites between the debtor and affiliates provided "a sufficient basis for the kind of 'unity of interest' that could give rise to 'related to' jurisdiction." Id. at 232. In the State Litigation, of course, the State of Montana is not even in the business of producing asbestos products. Rather, the State's liability in the State Litigation is predicated on the State's own violation of a governmental duty to warn about hazards at Grace's production sites. Orr, 106 P.3d at 108. But even if the fact that the inspections made by the State and the warnings it failed to issue regarding Grace's operations in Libby could be shoe-horned into the concept of a "common production site" between Grace and the State, Combustion Engineering makes it crystal clear that this factor does *not* represent a "unity of interest" that could confer jurisdiction. Combustion Engineering, 391 F.3d at 231-32.

This aspect of Combustion Engineering was not new, but simply an application of principles long settled under Pacor and Federal-Mogul. As the court in Combustion Engineering observed, Pacor rejected related-to jurisdiction even though the non-debtor's exposure to liability resulted from sale of products that the debtor manufactured, and Federal-Mogul found no

---

[68] There is indisputably no shared insurance between Grace and the State, so this factor will not be addressed in this Brief.

jurisdiction even though the non-debtors' exposure to liability resulted from incorporating the debtor's products into their own. Combustion Engineering, 391 F.3d at 231-32. The court continued:

> In both cases the unity of exposure created by asbestos contained in a common product was insufficient to give rise to "related to" jurisdiction when the third-party claim would not directly result in liability for the debtor.

Id. at 232.

The District Court's decision in Federal-Mogul explains why a claim against a non-debtor who merely asserts a right of contribution or indemnity does not directly result in liability for the debtor. In Federal-Mogul, non-debtors Chrysler, Ford and other automakers who were codefendants with the debtors in thousands of asbestos-related tort lawsuits (referred to as the Friction Products Litigation) sought to transfer those cases to the Delaware Bankruptcy Court, arguing that the tort suits were "related to" the debtors' Chapter 11 case so as to confer bankruptcy jurisdiction. Applying Pacor, District Court held that "related-to bankruptcy jurisdiction [does] not extend to a dispute between non-debtors unless that dispute, by itself, creates at least the logical possibility that the estate will be affected." Federal-Mogul, 282 B.R. at 309. The debtor, although a putative indemnitor, had no cause for concern that common facts would be litigated against the non-debtors, because no factual determination could be binding on the debtor's estate. Id. at 306. An indemnitor can be bound by an underlying judgment only if given an opportunity to be heard and defend, but since the automatic stay prevents the debtor from being required to defend, the debtor cannot be bound:

> Implicit in Pacor's rationale is that a debtor may not be prejudiced by its failure to defend a lawsuit against a third-party common-law indemnitee without de facto depriving the debtor of the benefit of the automatic stay of litigation against it.

Id. at n.3. Accordingly:

> The Court sees no justification to take the situation of these movants [the non-debtor codefendants of the debtor in asbestos litigation] outside of the rule of <u>Pacor</u>. **A judgment against them will not bind the debtors.** No asset of the estate is threatened nor is any re-ordering of creditors in the offing. It is true that recovery by asbestos claimants against the movants may give rise to claims, indeed very substantial claims, against the debtors in the future. It is at that time, when the movants appear as creditors of the estate and the facts underlying the liability are adjudicated in the context of the bankruptcy, that the Friction Product Claims will affect the estate.

<u>Id</u>. at 311 (emphasis added). The District Court's denial of jurisdiction was upheld by the Third

Circuit, which concluded:

> Any indemnification claims that the [automakers] might have against Debtors have not yet accrued and would require another lawsuit before they could have an impact on Federal-Mogul's bankruptcy proceeding . . . .

<u>Federal-Mogul</u>, 300 F.3d at 382.[69]

Before <u>Combustion Engineering</u>, it was possible (albeit incorrect) to distinguish <u>Pacor</u>

and <u>Federal-Mogul</u> on the basis that those decisions involved attempts to remove litigation to the

bankruptcy court, rather than attempts to enjoin such litigation. But in <u>Combustion Engineering</u>,

the Third Circuit applied the exact same analysis of related-to jurisdiction to the injunction

---

[69] In this regard (as well as in the requirement that a disciplined jurisdictional analysis precede consideration of a Section 105 injunction), the jurisprudence of the Third Circuit parts company with the Fourth Circuit. In <u>A.H. Robins, Inc. v. Piccinin (In re A.H. Robins Co.)</u>, 788 F.2d 994, 1000 (4th Cir. 1986), the Fourth Circuit upheld an injunction of litigation against non-debtor defendants who had a right of indemnification from the debtor because of concern that an indemnitee may be "unfairly mulcted by inconsistent judgments" if required to prove its indemnity claim in a bankruptcy claim allowance proceeding wherein the debtor would not be bound by the non-bankruptcy judgment against the indemnitee. Apart from being inconsistent with controlling Third Circuit precedent established by <u>Pacor</u>, <u>Federal Mogul</u> and <u>Combustion Engineering</u> on this issue, <u>Robins</u> is distinguishable from the present case because the non-debtor defendants were entitled to "absolute indemnity." <u>Id</u>. at 999. Here, it is undisputed that no relationship exists between Grace and the State that would entitle the State to absolute indemnification. Most likely, the State's rights against Grace (if any) are properly considered a claim for contribution, not indemnification. Grace's suggestion in the State Injunction Motion that the State Litigation could give rise to a right of indemnity appears based on the State's citation of older Montana caselaw purportedly establishing that a party primarily at fault is required to indemnify the less culpable joint tortfeasor. [Bankr. Case D.I. 8582, ¶ 38] (citing <u>Great Northern Ry. v. United States</u>, 187 F.Supp. 690, 693 (D. Mont. 1960)). This caselaw has been superseded by Montana's adoption of statutory comparative fault for multiple defendants. Mont. Code Ann. § 27-1-703 (1997). With contribution serving the purpose of allocating responsibility among parties who are at fault, indemnity is left as a remedy for a party that is not at fault. As recently stated by the Montana Supreme Court: "'Indemnity is an all-or-nothing proposition, representing in effect total contribution.'" <u>Durden v. Hydro Flame Corp.</u>, 983 P.2d 943 (Mont. 1999) (quoting <u>State, ex rel., Deere & Co. v. District Court of the Fifth Judicial District</u>, 730 P.2d 396, 405 (Mont. 1986)(superseded by statute)).

situation. As the Bankruptcy Court properly recognized in the Injunction Denial Decision, it is now clear that related-to jurisdiction must exist for litigation to be enjoined by the bankruptcy court, just the same as it must exist for litigation to be removed to the bankruptcy court.

Without citing Combustion Engineering, Federal-Mogul, or Pacor, and without even addressing the issue of jurisdiction, Grace's State Injunction Motion attempted to premise an injunction against the State Litigation on (a) the State's alleged indemnification or contribution claim, and (b) the sub-issue of "record taint"—Grace's allegation that since the State Litigation will necessarily involve evidence of Grace's operations in Libby, Grace will be prejudiced by evidence adduced and/or findings made in the State Litigation.[70] In the Injunction Denial Decision, the Bankruptcy Court correctly concluded that these factors do not suffice to confer jurisdiction.

Concerning indemnity, the State Injunction Motion stated merely that allowing the State Litigation to proceed "could potentially subject the Debtors to additional indemnity claims."[71] Neither Grace nor the State has anywhere alleged a contract between Grace and the State giving rise to an indemnity obligation. It is indisputable that at most, the State has a common law right of indemnity or contribution. As already described, the Third Circuit has ruled three times that a common law right of indemnity or contribution against a debtor that would arise from judgment in a litigation among non-debtors does not cause the litigation to be "related to" the debtor's bankruptcy for purposes of establishing federal jurisdiction. Combustion Engineering, 391 F.3d at 232; Federal-Mogul, 300 F.3d at 382; Pacor, Inc., 743 F.2d at 994-95.

---

[70] [Adversary Proc. D.I. 359.]
[71] [Adversary Proc. D.I. 359, ¶ 18.]  Grace later pointed out that: "The Debtors do not concede that the State possesses a valid indemnification and/or contribution claim against them.  The State, however, alleged such rights in its Third-Party Complaint and its filed proof of claim."  [Adversary Proc. D.I. 359, ¶ 25.]

Grace offered no argument to distinguish the instant matter from <u>Pacor</u>, <u>Federal-Mogul</u>,

and <u>Combustion Engineering</u>.  Indeed, no such distinction exists.  The State Litigation is going

forward against the State of Montana, not Grace.  Any claims that the State might have against

Grace have not yet accrued and would require another lawsuit before they could have an impact

on Grace's bankruptcy proceeding.  In the contested matter relating to allowance of the State's

claim, Grace will not be bound by any determination or order in the State Litigation.[72]  In sum,

as the Bankruptcy Court stated in the Injunction Denial Decision, the position of the claims in

the State Litigation

> is nearly identical to the claims in *Pacor* and *Federal-Mogul*.  Before any
> effect on Debtors can be realized, the State of Montana must first be found
> liable in state court and then pursue its claim for indemnification in
> bankruptcy court.

<u>Chakarian</u>, 366 B.R. at 301.

Dressing up the contribution/indemnity argument by referring to "record taint" cannot

change this result.  Grace's argument in the State Injunction Motion that its own conduct is "in

large part" at issue in the State Litigation[73] does not distinguish this situation from <u>Pacor</u> and

<u>Federal-Mogul</u>.  In <u>Federal-Mogul</u>, the debtor's conduct was squarely at issue because the debtor

had manufactured the brake pads that were the subject of the third-party litigation.  Nevertheless,

the bankruptcy court lacked jurisdiction over the target litigation.  <u>Federal-Mogul</u>, 282 B.R. 301.

In <u>Pacor</u>, too, the debtor's conduct was at issue in the third-party litigation, which concerned

asbestos products manufactured by the debtor.  The debtors in <u>Pacor</u> and <u>Federal-Mogul</u> faced

the same detriment about which Grace professes concern: in the litigation among non-debtor

---

[72] Apart from the federal principles discussed above, Montana law prohibits the State from litigating or establishing
a factual basis (*i.e.*, percentage of comparative fault) against Grace for either contribution or indemnity during the
course of the State Litigation.  <u>See</u> generally Mont. Code Ann. § 27-1-703 (1997); <u>Plumb v. Fourth Judicial Dist.
Court</u>, 927 P.2d 1011 (Mont. 1996) (entry of findings against a non-party violates substantive due process).
[73] [Adversary Proc. D.I. 359, ¶ 23.]

parties, witnesses might say things about the debtor without the debtor being present to cross-examine. It follows *a fortiori* from Pacor, Federal-Mogul, and Combustion Engineering that—since even a judgment with adverse implications for the debtor is insufficient to establish bankruptcy jurisdiction over the target litigation—the less serious prospect that someone may say something bad about the debtor in the target litigation cannot confer jurisdiction.

Although even a well-founded concern about "record taint" cannot confer jurisdiction, Grace has failed to establish a valid basis for any such concerns in this case. While Grace points to a District Court decision in Johns-Manville noting that "[o]nce an admission against interest is made, under oath or otherwise, by the agent of a party, that admission stands for all time," that observation is inapposite here.[74] Whatever admissions Grace is concerned about have already been made. The issue of Grace's conduct in Libby has been tried three times to verdict in Montana.[75] In addition to the numerous documents, photographs and other exhibits that were submitted to the courts during those trials, the plaintiffs introduced the testimony of dozens of miners along with the very damaging testimony of Earl Lovick, the assistant manager of the Libby Mine for nearly 30 years, and now deceased.[76] The evidentiary record of Grace's misconduct in Libby already exists. Indeed, the Montana Supreme Court has determined that the proof meets Montana's high standard for punitive damages, see Mont. Code Ann. § 27-1-221 (1997), and affirmed a jury's finding that Grace committed intentional, reckless and/or malicious conduct. Finstad v. W.R. Grace & Co., 8 P.3d 778 (Mont. 2000).

---

[74] [Adversary Proc. D.I. 359, ¶ 29, (citing Johns-Manville Corp. v. Asbestos Litig. Group (In re Johns-Manville Corp.), 40 B.R. 219, 225 (S.D.N.Y. 1984)).]
[75] [Adversary Proc. D.I. 363, p.15.]
[76] [Id.]

The possibility of collateral estoppel, which Grace says would arise from the State Litigation **if Grace were to intervene therein,**[77] affords no jurisdiction for the Bankruptcy Court's entry of an injunction. The Third Circuit has held that the parties' own proposed actions cannot confer jurisdiction even when in pursuit of the laudable goal of confirming a Chapter 11 plan. See Combustion Engineering, 391 F.3d at 228-30. See also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982) ("[N]o action of the parties can confer subject matter jurisdiction upon a federal court."); In re Resorts Int'l, Inc., 372 F.3d 154, 161 (3d Cir. 2004); Coffin v. Malvern Fed. Sav. Bank, 90 F.3d 851, 854 (3d Cir. 1996). Grace's threat of a self-inflicted wound if the Bankruptcy Court were to deny the requested injunction did not and cannot confer jurisdiction that the Bankruptcy Court otherwise lacked.

In sum, the factors advanced by Grace in the State Injunction Motion—(1) potential indemnity or contribution claims, (2) the possibility (illusory in any event) of "record taint," or (3) the prospect of collateral estoppel if Grace chooses to intervene in the State Litigation—were properly recognized by the Bankruptcy Court as falling short of the standards developed by extensive Third Circuit precedent to confer on the Bankruptcy Court jurisdiction to enjoin the State Litigation. For the same reasons, the Bankruptcy Court lacked jurisdiction to enjoin the State Litigation pursuant to the Stay Order. Indeed, the Bankruptcy Court has already held as much.

### C.    For the Same Reasons, the Bankruptcy Court Lacked Jurisdiction to Enjoin the BNSF Litigation Pursuant to the Stay Order

For the reasons set forth above and in the Injunction Denial Decision, the Bankruptcy Court lacked subject matter jurisdiction to enjoin the BNSF Litigation just as surely as it lacked jurisdiction to enjoin the State Litigation. Just as the State Litigation concerns the State's own

---

[77] [Adversary Proc. D.I. 359, ¶ 31.]

tortious conduct, the BNSF Litigation concerns BNSF's negligence in conducting its own operations as a railroad. If a state court verdict were to enter against BNSF, it would need to return to the Bankruptcy Court to obtain allowance of a claim for indemnity or contribution against Grace—just like Pacor in the Pacor case and just like the State in the Injunction Denial Decision. BNSF itself has acknowledged that the Injunction Denial Decision is equally applicable to the BNSF Litigation.[78] Absent demonstration by Grace that the BNSF Litigation is distinguishable in any meaningful way from the State Litigation, the Stay Order must be vacated in its entirety as the Bankruptcy Court lacked jurisdiction over either the State Litigation or the BNSF Litigation.

III.    **Even if the Bankruptcy Court Concluded Jurisdiction Existed to Enjoin the State Litigation or BNSF Litigation, a Section 105 Injunction was Not Warranted**

Even where a bankruptcy court has jurisdiction to enjoin actions between non-debtors, the Bankruptcy Court is still constrained by the limits on such injunctions established under federal law. In considering a stay of any civil litigation, federal courts must give paramount importance to the rights of the plaintiff. Clinton v. Jones, 520 U.S. 681, 707-08 (1997). This requirement does not disappear because the litigation is related to a bankruptcy proceeding. Indeed, when the injunction of non-debtor litigation is in the context of a Chapter 11 case, it is established that even if the bankruptcy court has jurisdiction, it may enter the injunction under Section 105 only if the moving party demonstrates the existence of (i) unusual circumstances warranting the injunction and (ii) the traditional prerequisites to issuance of an injunction. See Feld v. Zale Corp. (In re Zale Corp.), 62 F.3d 746, 761, 765 (5th Cir. 1995). In addition, courts

---

[78] Motion of BNSF for Leave to File a Reply (I) In Further Support of Its Motion for Clarification of the Scope of the Preliminary Injunction, or In the Alternative, for Relief From the Preliminary Injunction and (II) In Further Opposition to the Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against BNSF. [Adversary Proc. D.I. 438, Ex.1, pp. 4-5.]

are required to apply the traditional four-part test. <u>Solidus Networks, Inc. v. ExcelInnovations,</u>

<u>Inc. (In re ExcelInnovations, Inc.)</u>, 2007 WL 2555941, *5-6 (9th Cir. 2007); <u>Zale</u>, 62 F.3d at 65;

<u>Am. Imaging Servs. v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.)</u>, 963 F.2d 855,

858 (6th Cir. 1992); <u>Wedgewood Inv. Fund v. Wedgewood Realty Group, Ltd. (In re</u>

<u>Wedgewood Realty Group, Ltd.)</u>, 878 F.2d 693, 700-01 (3d Cir. 1989); <u>but see</u> <u>Fisher v.</u>

<u>Apostolou</u>, 155 F.3d 876, 882 (7th Cir. 1998) (moving party need not show irreparable harm).

Because the Bankruptcy Court ruled that its jurisdiction does not extend to the State

Litigation, it concluded that it was "unnecessary to conduct an analysis of whether an injunction

under § 105(a) is appropriate."[79] Had the Court conducted such an analysis in the State

Injunction Motion matter, or the BNSF Injunction Motion case for that matter, it certainly would

have determined that Grace failed to meet either requirement in support of its request to enjoin

the State Litigation[80] or BNSF Litigation.[81]

## CONCLUSION

Based on the foregoing, the order of the Bankruptcy Court enjoining the State Litigation

and the BNSF Litigation should be reversed.

---

[79] [Adversary Proc. D.I. 419.]
[80] Opposition of Libby Claimants to Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against the State of Montana [Adversary Proc. D.I. 363, pp. 17-26.]
[81] Opposition of Libby Claimants to Debtors' Motion to Expand the Preliminary Injunction to Include Actions Against BNSF. [Adversary Proc. D.I. 417, pp. 11-20.]

Dated: October 25, 2007
     Wilmington, Delaware

**LANDIS RATH & COBB LLP**

_/s/ Kerri Mumford_

Adam G. Landis (No. 3407)
Kerri Mumford (No. 4186)
919 Market Street, Suite 600
P.O. Box 2087
Wilmington, DE 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450
Email: landis@lrclaw.com
      mumford@lrclaw.com

- and -

Daniel C. Cohn
Christopher M. Candon
**COHN & WHITESELL LLP**
101 Arch Street
Boston, MA 02110
Telephone: (617) 951-2505
Facsimile: (617) 951-0679
Email: cohn@cwg11.com
      candon@cwg11.com

_Counsel to the Libby Claimants_

G:\DATA\877p\Dist Crt Brief (BNSF and Mont Injunction)5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>W.R. Grace & Co., *et al.*,<br><br>Debtors. | 1:07-cv-00609<br>Hon. Ronald L. Buckwalter<br>United States District Judge |
| Libby Claimants, *et al.*,<br><br>Appellants,<br><br>v.<br><br>W.R. Grace & Co., *et al.*,<br><br>Appellees. | Appeal from United States<br>Bankruptcy Court for the<br>District of Delaware<br><br>Chapter 11<br><br>Case No. 01-01139<br>Adv. Proc. No. 01-771<br>Hon. Judith K. Fitzgerald |

### AFFIDAVIT OF SERVICE

STATE OF DELAWARE    )
                                        ) SS
NEW CASTLE COUNTY    )

      Cathy A. Adams, being duly sworn according to law, deposes and says that she is employed by the law firm of Landis Rath & Cobb LLP, attorneys for the Libby Claimants in the above-referenced cases, and on the 25th day of October, 2007, a copy of the following

### APPELLANTS' BRIEF

was caused to be served upon the parties on the attached list in the manner as indicated.

                                      _____
                                        Cathy A. Adams

SWORN TO AND SUBSCRIBED before me this 25th day of October, 2007.

_____
     Notary Public      ~~Kerri K. Mumford~~
                         **Attorney at Law**
               Notary Public, State of Delaware
              My Commission Has No Expiration Date
                    29 Del C §4323(a)(3)

393.001-18337

**Libby Claimants,** *et al.* **v. W.R. Grace & Co.,** *et al.*
**Civil Action No. 07-609**

**District Court Appeal**
**Service List**

**Via First Class Mail**
(Counsel to W.R. Grace & Co., *et al.*)
David M. Bernick, P.C.
Janet S. Baer, Esq.
Lori Sinanyan, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL  60601

**Via Electronic Notification**
(Counsel to Debtors and Debtors in Possession)
Laura Davis Jones, Esq.
James E. O'Neill, Esq.
Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899

**Via First Class Mail**
(Counsel to the Official Committee of
Asbestos Personal Injury Claimants)
Peter Van N. Lockwood, Esq.
Nathan D. Finch, Esq.
Caplin & Drysdale, Chartered
One Thomas Circle, N.W.
Washington, DC 20005

**Via Electronic Notification**
(Counsel to the Official Committee of
Asbestos Personal Injury Claimants)
Marla Rosoff Eskin, Esq.
Mark T. Hurford, Esq.
Campbell & Levine, LLC
800 King Street, 3rd Floor
Wilmington, DE 19801

**Via First Class Mail**
(Counsel to the Official Committee of
Asbestos Personal Injury Claimants)
Elihu Inselbuch, Esq.
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152-3500

**Via Electronic Notification**
Evelyn J. Meltzer, Esq.
Pepper Hamilton LLP
Hercules Plaza, Suite 5100
1313 Market Street
PO Box 1709
Wilmington, DE 19899-1709
(Counsel to BNSF Railway Company)

**Via First Class Mail**
Edward C. Toole, Jr., Esq.
Anne Marie Aaronson, Esq.
Pepper Hamilton LLP
3000 Two Logan Square
18th & Arch Streets
Philadelphia, PA 19103
(Counsel to BNSF Railway Company)

**Via Electronic Notification**
(Counsel to the State of Montana)
Francis A. Monaco, Jr., Esq.
Kevin J. Mangan, Esq.
Womble Carlyle Sandridge & Rice, PLLC
222 Delaware Avenue, Suite 1501
Wilmington, DE  19801

**Via First Class Mail**
(Counsel to the Libby Claimants)
Daniel C. Cohn, Esq.
Christopher M. Candon, Esq.
Cohn & Whitesell LLP
101 Arch Street
Boston, MA  02110